**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| **SECURITIES AND EXCHANGE** | : | |
| **COMMISSION,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. :** |
| | | |
| | | **1:11-cv-0056-TCB** |
| **v.** | : | |
| | : | |
| | : | |
| **STANLEY J. KOWALEWSKI and** | : | |
| **SJK INVESTMENT** | : | |
| **MANAGEMENT, LLC** | : | |
| | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS EXPEDITED APPLICATION**
**FOR THE APPOINTMENT OF A RECEIVER AND OPPOSITION TO**
**DEFENDANTS' EXPEDITED APPLICATION FOR EXPENDITURE OF**
**FROZEN ASSETS AND PLAN FOR MONITORING ASSETS**

**PRELIMINARY STATEMENT**

By Defendants' application for the appointment of a Corporate Monitor,

Defendants effectively concede the necessity of winding down Defendant SJK

Investment Management, LLC ("SJK") and distributing the investor assets back to

the investors.  Hence, only two issues remain to be resolved by the Court:  (1)

should the Court permit Defendants Stanley J. Kowalewski ("Kowalewski") and

SJK to wind down the funds, with the assistance of a Corporate Monitor, or should the funds be wound down through a Receiver; and (2) should the Court permit various carve-outs from the asset freeze, including payment of personal expenses for Kowalewski, business expenses for SJK, and attorney's fees for Defendants' counsel?

With regard to the first issue, Plaintiff Securities and Exchange Commission ("Commission") respectfully submits that Defendants cannot be trusted to have any further involvement with investors' monies: Defendant Kowalewski has repeatedly and recently lied to investors and misappropriated their money; he has repeatedly lied under oath to the Commission; he has failed to provide − in violation of this Court's January 6, 2011 Order − a sworn, personal accounting ordered by the Court setting forth the "disposition and use" of the $7.6 million that he has admitted receiving; and the accounting submitted by Defendant SJK is absurd on its face and wholly unsupported.  There is nothing to suggest that Defendants will not continue their pattern of deceit and obstruction following the appointment of a Corporate Monitor.  An independent receiver is necessary to protect investors and provide them with an honest accounting of where their investments currently stand.

With regard to a carve-out, Defendants, through their own accounting and "financial statement" submitted to this Court, admit that: (1) Defendants took over

$10 million from the Absolute Return Funds (a remarkable number given a total investment pool of approximately $80 million), with $7.6 million of that being taken by Defendant Kowalewski; and (2) Defendants do not have the ability to repay these monies, or even a significant portion of them.   The inescapable conclusion is that Defendants now seek, despite damaging investors for millions of dollars, to use *investor* monies to pay their expenses and attorneys.  At a minimum, the Commission respectfully submits that the basis for any carve-out has not been satisfied and that no carve-out of any sort should be permitted until after a Receiver has been appointed and has completed an initial accounting.

## ARGUMENT

### I.   A Receiver is Necessary to Protect Investors.

#### A.   *Defendants Fail to Rebut the Prima Facie Violations of the Federal Securities Laws.*

As even Defendants' own opposition brief demonstrates, Defendants' violations of the federal securities laws can no longer be in question.   As an initial matter, Defendants fail to rebut in any way numerous serious violations of the federal securities laws, including any rebuttal to the sworn declarations of investors and investment advisers that Kowalewski repeatedly represented that he had over $400 under management.  *See* Pl.'s App. (Dkt. 18.1) at 11; *see also* Declaration of Earnest V. Montford (Dkt. 20.2) at ¶ 4; Declaration of Todd K. Borton (Dkt. 20.1)

3

at ¶ 2.  These are material misrepresentation to which Defendants offer no response.

Defendants further concede their provision of the Absolute Return Funds documents to investors at the time of the offering; that those documents contain representations, including that "substantially all" of investor money must be invested in "unaffiliated" funds and no more than 15% would be invested in any one fund; and that, in fact, far more than 15% (even up to 24% according to Defendants) was invested into the Special Opportunities Fund.  Defs.' Mem. at 9-10.[1]

Defendants seek to justify their misconduct by pointing to ambiguous language in the Special Opportunities Fund offering memorandum or PPM.  What Defendants fail to note for the Court, however, is that *this offering memorandum* − as admitted by Defendant Kowalewski in testimony − *was never provided to the investors.*  *See* Testimony of Stanley Kowalewski (Dkt. 1.4) at pp. 56, 67, & 77.

Kowalewski also testified that he told certain investors about the Special Opportunities Fund orally (*id.* at p. 68), but even that was a lie.  *See* Declaration of

---

[1] Defendants' attempt to create some ambiguity over the phrase "substantially all" to argue that up to a 24% investment in the Special Opportunities Fund would be permitted.  "Substantially all" is not a big enough loophole to drive a 25% investment through.  Moreover, as demonstrated by Defendants' own documents, millions more was funneled to the Special Opportunities Fund even after the 15% threshold had been hit, including over $5 million in September 2010.

4

Gregory Schaack (Dkt. 18.4) at ¶¶ 10-12; Montford Dec. at ¶ 7.  Kowalewski's use of investor money to purchase residential real estate owned by him through a fund affiliated with him was "wholly inconsistent" with the information investors were provided about the Absolute Return Funds., Schaack Dec. at ¶¶ 13-14.  Indeed, it strains common sense to argue these investors (pension funds, charitable foundations, hospitals and the like) who were looking for conservative investments, somehow approved of Kowalewski buying his own home, his parents home, his brother in law's home and using investor monies to build a gymnasium at a private high school.

Finally, even if the Court were to place any significance to the secret Special Opportunities Fund PPM,[2] nothing in the document can possibly justify the staggering $10,025,000 that Defendants *admit* they withdrew from the Special Opportunities Fund, and the $7.6 million Kowalewski has admitted to taking.  *See,* Fulcher Decl. dated Jan. 31, 2011 ("Third Fulcher Decl.,"), Ex. 5, pp. 1-9.[3]  Indeed,

---

[2] The Commission continues to investigate the origins of the Special Opportunities Fund PPM.  Kowalewski testified that it was modified in August 2010 by Tannenbaum Helpern Syracuse & Hirschtritt LLP to permit additional payments to Defendants.  Kowalewski Test. at pp. 84-85.

[3] Kowalewski even lied to the Commission about whether he was adhering to the Special Opportunities Fund PPM.  Kowalewski testified, as required by that PPM, an "Investment Committee" made the Special Opportunities Fund investment decisions.  *Id.* at p. 95-96.  SJK's senior analysts have flatly sworn to the opposite.  *See, e.g.,* Declaration of Brandon Smith (Dkt. 18.5) at ¶¶ 4-5; Declaration of Matt Zimmerman dated February 1, 2011 and submitted herewith).

Defendants' own documents, which the Commission questions, demonstrates that, at a maximum, Defendants would be entitled to no more than approximately $1.2 million in fees, not the $10 million misappropriated.[4]

B.    *Defendants Cannot Be Trusted with Investor Assets.*

Defendants' egregious misconduct in violation of the federal securities laws is, by itself, compelling justification for the appointment of a receiver. Equally important is Kowalewski's pattern of deceit and non-cooperation with the Commission, discovered and conducted even after the entry of the Court's TRO Order.

While Defendants seek to tout their cooperation with the Commission, a hallmark of cooperation is truthfulness. As the Commission discovered following the filing of its Complaint, however, Kowalewski has been – and continues to be – dishonest with the Commission. He has lied about what he told investors and lied

---

[4]   The Commission does not concede the accuracy of the accounting submitted by Defendants, including the purported returns generated by the unaffiliated funds. Nevertheless, by Defendants' own valuations of the unaffiliated funds, if one were to exclude the monies contributed to the Special Opportunities Fund, Defendants would only be entitled, at a maximum, to approximately $770,000 (1% of approximately $70 million under total management, excluding the Special Opportunities Fund) and $500,000 as an incentive fee (10% of a return on profit of approximately $5 million). This would not, of course, take into account the various losses suffered by the investors, including the loss on investments that could have been generated given the S&P 500's earning 12.78% during 2010.

about who selected investments in the Special Opportunities Fund.  And, notably, Defendants do not even try to rebut these serious allegations.

By way of further example, by its Order of January 6, 2011, the Court ordered that, within five days, Defendants were to present a sworn accounting to the Court of "all funds received by that Defendant pursuant to the scheme described in the Commission's Complaint and of the disposition and use of said proceeds."  Defendant Kowalewski, despite repeated requests from the Commission, has simply failed to do so in violation of the Court Order.

On January 31, 2011, Kowalewski did submit to the Court a "Personal Financial Statement."   Such a document, however, clearly does not satisfy the Court's Order that Kowalewski provide an accounting of the "disposition and use" of the $7.6 million he took from the Absolute Return Funds.

Moreover, based on information that has come to light since the filing of its receiver application, the Commission has questions as to whether this financial statement is accurate.  The Commission has obtained information that Kowalewski is a civil plaintiff currently seeking payment of $460,000 owed on a promissory note, and a counterclaim has been filed for hundreds of thousands of dollars (Declaration of Michael Cates, Exhibit 1).  This amount is either an asset or a liability.  Moreover, it should have been disclosed in the personal financial statement which specifically requests the disclosure of any pending suits or legal

actions under the header "Contingent Liabilities."  But Defendant Kowalewski

simply failed to disclose the existence of this current lawsuit to the Commission

and this Court.

Finally, and perhaps most remarkably, Defendants continue to hew to

facially absurd valuations, submitted to this Court, of the "investments" by the

Special Opportunities Fund, including the October 2010 investment of $250,000 in

KSTSO, which is currently valued at $11.5 million (a return of over 4000%).  *See,*

*e.g.*, Second Fulcher Decl., Ex. 1, Third Fulcher Decl., Ex. 5, p. 10.  Plaintiff has

repeatedly requested that Defendants provide some back-up support, whether

through an independent appraisal or otherwise, for its valuations.  Defendants'

failure to do so in its briefing papers or declarations speaks volumes.

Based on the nature and extent of the conduct recently discovered and the

pattern of behavior by Defendants since the entry of the Court's TRO Order, the

Commission respectfully submits that the Defendants should not have any further

involvement with the investors assets; rather, a Receiver is necessary to provide an

honest accounting and proper marshalling of assets so that the investors can begin

the process of repairing the damage wrought by Defendants.

## II.    The Court Should Not Approve Carve-Outs to the Asset Freeze.

Defendants seek substantial sums of money carved out from the asset freeze,

including $140,074 to Tannenbaum Helpern Syracuse & Hirschritt LLP for legal

fees, $24,750.83 per month to SJK for operating expenses, and $17,950 per month to Kowalewski for personal expense.

Defendants' own documents reveal, however, that: (1) Defendant SJK took over $10 million, with Stan taking $7.6 million of that amount, Third Fulcher Decl., Ex. 5, p. 9; (2) the maximum fees that Defendants might be entitled to would be approximately $1.2 million, *see* footnote 4, above; and (3) Defendants do not have the ability to pay even a significant portion of those misappropriations. As such, based on the evidence provided to date, including Defendants' own evidence, Defendants' request for fees and expenses is simply a request to take and use more investor monies.  The release of any funds simply depleting any eventual investor recovery.[5]

In such circumstances, it has long been recognized that courts should not authorize such carve-outs.  *See, e.g.*, *SEC v. Cherif*, 1989 U.S. Dist. Lexis 15114, No. 89-c-4204, *1 (Sept. 27, 1989 N.D. Ill.) (denying motion for carve-out where Defendant "failed to demonstrate  that he has a legitimate claim to any of the frozen assets – that any portion of the assets are free from the taint of the securities

---

[5] Defendants argue they are owed money by certain investors for managing their investments, including $56,738 from the largest investor in the Absolute Return Funds.  But this money, if paid at all, should become an asset for the receivership estate for ultimate distribution to investors and should not be appropriated for Defendants' legal expenses.  Further, Defendants' attempts to claim that certain of the St. Joseph's monies should be used to pay fees is especially misplaced given that St. Joseph's, in another fund, has likely suffered the greatest damage of any investor by Defendants' misconduct.

fraud alleged by the SEC."  (citation omitted); *SEC v. Credit Bancorp. Ltd.,* 2010

U.S. Dist. Lexis 20836, *8, *9, *10 (Mar. 4, 2010 S.D.N.Y.) (noting that, "to

succeed on a motion to modify freeze to permit payment of attorneys' fees and

other expenses, defendant 'must establish that such a modification is in the

interests of defrauded investors'" and noting further that, even a criminal defendant

would have no Sixth Amendment right "to use funds he has stolen from a bank to

retain an attorney to defend him."

As also recognized by the court in *Cherif*, "one method by which

[defendant] could have accomplished this [demonstration that he has a legitimate

claim to any of the frozen assets] would have been to provide an accounting as he

was ordered" to do by the Court.  However, Defendant Kowalewski, by violating

the Court order and failing to provide the required accounting, equally failed to

provide any justification for any lifting of the asset freeze.

The Commission submits that there is far from sufficient evidence to permit

any carve-out of expenses or fees at this time.  At a minimum, any proposed carve-

out should await the appointment of a Receiver and an initial determination of any

entitlement that Defendants may have to any monies.[6]

---

[6] In any event, the Court should not approve the sums suggested by Defendants.
Kowalewski requests an unsupported sum of $17,950 per month ($211,080 per
year) for "living expenses," including $3,000 for utilities, $2,000 for cell phones,
$2,000 for clothing and payment of his wife's credit card bill.  It is worth also
noting that, as Kowalewski had investors improperly pay off his mortgage, he does

**CONCLUSION**

Based on the foregoing, and the Commission's other submissions in this matter, the Commission respectfully requests that its application for the appointment of a receiver be granted, and that Defendants' application for authorization of expenditure of frozen assets and approval of a plan for monitoring assets be denied.

Respectfully submitted this 1st day of February, 2011.

/s/ Paul T. Kim
Senior Trial Counsel
Georgia Bar. No. 418841
Email: kimpau@sec.gov

Alex Rue
Senior Trial Counsel
Georgia Bar No. 618950
Email: Ruea@sec.gov

Michael J. Cates
Staff Attorney
Georgia Bar. No. 116356
Email: catesm@sec.gov

Counsel for Plaintiff
U. S. SECURITIES AND EXCHANGE COMMISSION
3475 Lenox Road, N.E., Suite 1000
Atlanta, Georgia 30326-1234
(404) 842-7600
(404) 842-7679 fax

---

not have to pay this large expense and, moreover, is currently obtaining the benefits of his misappropriations through his continued residence at that house.

11

## CERTIFICATE OF SERVICE[7]

I hereby certify that a copy of the foregoing PLAINTIFF'S REPLY IN

SUPPORT OF ITS EXPEDITED APPLICATION FOR THE APPOINTMENT

OF A RECEIVER AND OPPOSITION TO DEFENDANTS' EXPEDITED

APPLICATION FOR EXPENDITURE OF FROZEN ASSETS AND PLAN FOR

MONITORING ASSETS was filed electronically with the Clerk of the Court using

CM/ECF system which will automatically serve notice to the following attorneys

of record:

**RONALD L. RUBIN, ESQ**.
Tannenbaum Helpern Syracuse & Hirschtritt LLP
900 Third Avenue
New York, New York  10022
**www.thshlaw.com**


This 1st day of February, 2011.

                                        Respectfully submitted,

                                        /s/ Paul T. Kim
                                        Paul T. Kim
                                        Senior Trial Counsel
                                        Georgia Bar No. 418841
                                        Email: kimpau@sec.gov

---

[7] I hereby certify that the forgoing brief is prepared in Times New Roman font as required.

COUNSEL FOR PLAINTIFF
Securities and Exchange Commission
3475 Lenox Road, N.E. Suite 500
Atlanta, Georgia 30326-1232
Tel: (404) 842-7600
Fax: (404) 842-7666