IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>  vs.<br><br>STANLEY J. KOWALEWSKI and SJK INVESTMENT MANAGEMENT, LLC,<br><br>  Defendants. | CIVIL ACTION NO.<br>1:11-cv-0056-TCB |

## FIRST APPLICATION OF RECEIVER FOR AUTHORITY TO PAY PROFESSIONAL FEES AND TO REIMBURSE COSTS

S. Gregory Hays, Receiver for Defendants Stanley J. Kowalewski; SJK Investment Management, LLC; the SJK Special Opportunities Fund, LP, and all of their assets files his first application for authority to pay professional fees for services rendered and to reimburse costs advanced on behalf of the Receiver, and respectfully shows the following:

## BACKGROUND

1.

Pursuant to Orders dated February 2, 2011[ECF No. 37] and March 8, 2011 [ECF No. 59] (the "Receivership Orders"), S. Gregory Hays was appointed as

Receiver for Stanley J. Kowalewski ("Kowalewski"), SJK Investment

Management, LLC ("SJK"), the SJK Special Opportunities Fund, LP (the "SOF"),

and all of their assets (collectively, the "Receiver Estate").  The Receivership

Orders grant the Receiver broad authority over the organization, management,

control, and disposal of the assets of the Receiver Estate.

2.

Included in the Receiver's powers is the ability to "employ such employees,

accountants, consultants, attorneys and other professionals, including employees of

his own professional firm, as are necessary and proper for the administration of the

Receiver Estate and the performance of his duties."  (Feb. 2, 2011 Order at § XVI.)

The Receivership Orders further provide that:

> [t]he Receiver shall seek and obtain the approval of this Court prior to
> disbursement of professional fees and expenses to himself, his firm or
> his counsel, by presentation of a written application therefore, and
> after consultation with the Commission and counsel for the
> defendants.  All costs incurred by the Receiver shall be paid from the
> Receiver Estate.

(*Id.*)

3.

The Receiver has retained the financial consulting firm of Hays Financial

Consulting, LLC ("HFC") as his accountants and financial consultants and the law

firm of Troutman Sanders LLP ("Troutman Sanders") as counsel to the Receiver.

2

(The Receiver, HFC, and Troutman Sanders are collectively referred to as the "Receiver Team").

4.

The Receiver filed his First Interim Report on March 3, 2011 [ECF No. 55]. The Receiver also has provided updates to investors via memoranda dated February 7, 2011; April 6, 2011; and May 5, 2011, copies of which are attached hereto as Exhibit A. Many of the activities undertaken by the Receiver, his counsel, and his accountants and consultants are summarized in the Receiver's First Interim Report and the updates to investors.

5.

As indicated in the First Interim Report, the investor updates, and as described more fully below, this is a complicated case, which has required and continues to require significantly more effort by the Receiver Team than initially anticipated by the Receiver or the Securities and Exchange Commission (the "SEC"). The professionals working on this case are well aware of the time and expense being incurred and endeavor at all times to work in an efficient and productive manner.

## APPLICATION FOR FEES

**A.      Basis for Entitlement to Fees**

6.

The Receiver, his financial consultants, and any counsel or accountants are entitled to reasonable compensation for the performance of their duties from the assets held by or in the possession or control of the Receiver Estate, in the amount(s) commensurate with their duties and obligations, plus actual out-of-pocket expenses incurred by them.

7.

The Receivership Order provides that the Receiver and the professionals working with him will apply to the Court for approval to pay professional fees and expenses.

8.

This Application seeks approval for payment of the fees and reimbursement of expenses for the Receiver, HFC, and Troutman Sanders for the time period from February 1, 2011 through April 30, 2011.

9.

In support of this Application, the Receiver respectfully directs the Court's attention to *Ass'n of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357,

4

1359 (11th Cir. 2006), which sets forth the appropriate test in the Eleventh Circuit

for the determination of a fee award.  The Court in *Ass'n of Disabled Americans*

held:

> In calculating a reasonable attorney's fee award, the court must
> multiply the number of hours reasonably expended on the litigation by
> the customary fee charged in the community for similar legal services
> to reach a sum commonly referred to as the "lodestar."  The court may
> then adjust the lodestar to reach a more appropriate attorney's fee,
> based on a variety of factors, including the degree of the plaintiff's
> success in the suit.

*Id.* (citations omitted).  The amount and reasonableness of the fees and costs

sought to be approved in this Application are addressed below.

10.

As stated in the First Interim Report, the Receiver Team is working under a

fee structure which includes a discount from the professionals' standard market

rates and a $500,000 cap for their professional fees incurred in connection with

"core receiver functions."  In addition, there are "extraordinary activities" that are

not within the fee cap.[1]  The Receiver Team has established a billing regimen that

will assist the Court, the parties, and investors in determining how the Receiver

---

[1] Copies of the Receiver's initial proposal to the SEC and the Receiver's January
19, 2011 letter to Alex Rue, which previously have been provided to investors and
the Court, are attached hereto as <u>Exhibit B</u>.

5

Team is allocating its time for billing purposes between "core" and "extraordinary" activities.

11.

In a May 5, 2011 update to investors, counsel for the Receiver informed investors of various issues that have led to this receivership being substantially more complex to administer and the resultant increases in fees and expenses to the Receiver Estate.  (*See* Ex. A.)

12.

Because both the nature and the amount of work required in the administration of the Receiver Estate have far exceeded the Receiver's and the SEC's initial expectations, the Receiver anticipates that, in the near future, he will seek to alter the fee cap for core receivership activities.  Moreover, the Receiver Team's time spent on extraordinary activities also has exceeded the Receiver's and the SEC's initial expectations and these activities likely will continue to require significant attention from the Receiver Team in the foreseeable future.

13.

In preparing this fee application, the Receiver Team has endeavored to allocate its time as accurately as possible between core receivership and extraordinary tasks; however, it is important to note that it is often difficult to

6

allocate fees precisely between these two groups of tasks.   Further, the Receiver

Team understands that, regardless of how the fees are categorized, the Receiver

Team's activities (and the fees associated therewith) must be limited to matters

necessary for the efficient administration of the Receiver Estate.

**B.      Fees and Expenses for Period from February 1, 2011 through April 30, 2011**

14.

For the period from February 1, 2011 through April 30, 2011, the Receiver

Estate incurred $468,342.91 in fees and $13,918.16, in expenses, which are broken

down as follows:

Core Receivership Fees (In Cap) –              $364,151.68

Fees for Extraordinary Activities (Outside Cap) –   $104,191.23

Expenses (Outside Cap) –                        $  13,918.16

| RECEIVER – S. GREGORY HAYS<br>February 2011 – April 2011 | | | | |
|---|---|---|---|---|
| | February 2011 | March 2011 | April 2011 | Total |
| Total Fees Inside Cap | 43,200.00 | 19,944.00 | 3,672.00 | 66,816.00 |
| Total Fees Outside Cap | 1,800.00 | 4,104.00 | 2,592.00 | 8,496.00 |
| Expenses (Outside Cap) | 1,912.15 | 1,327.40 | | 3,239.55 |
| TOTALS | 46,912.15 | 25,375.40 | 6,264.00 | 78,551.55 |

7

| HAYS FINANCIAL CONSULTING, LLC<br>February 2011 – April 2011 | | | | |
|---|---|---|---|---|
| | February 2011 | March 2011 | April 2011 | Total |
| Total Fees Inside Cap | 65,419.55 | 33,447.20 | 8,844.60 | 107,711.35 |
| Total Fees Outside Cap | 5,187.00 | 1,547.30 | 21,298.70 | 28,033.00 |
| Expenses (Outside Cap) | 1,339.06 | 430.43 | 1,405.41 | 3,174.90 |
| TOTALS | 71,945.61 | 35,424.93 | 31,548.71 | 138,919.25 |

| TROUTMAN SANDERS LLP<br>February 2011 – April 2011 | | | | |
|---|---|---|---|---|
| | February 2011 | March 2011 | April 2011 | Total |
| Total Fees Inside Cap | 104,634.28 | 55,331.21 | 29,658.84 | 189,624.33 |
| Total Fees Outside Cap | 11,122.02 | 18,552.14 | 37,988.07 | 67,662.23 |
| Expenses (Outside Cap) | 861.75 | 5,039.90 | 1,602.06 | 7,503.71 |
| TOTALS | 116,618.05 | 78,923.25 | 69,248.97 | 264,790.27 |

Attached hereto as Exhibit C, is a more detailed summary of these fees which shows the monthly amount of fees for the Receiver, HFC, and Troutman Sanders by billing task codes.  All of the Receiver Team's fees are being billed at a discount to standard rates.

### 15.

Monthly statements attached hereto as Exhibits D through F contain the following information for the time period of February 1, 2011 through April 30, 2011 for the Receiver, HFC, and Troutman Sanders, respectively: (a) the number of hours worked by each professional; (b) the manner and type of work performed

8

by each professional; and (c) the monetary value assigned to each task performed by each professional.  However, information protected from disclosure by the attorney-client privilege and attorney work-product doctrine has been redacted from these statements.

16.

The hourly rates reflected in Exhibits D through F are commensurate with the rates charged by other professionals of similar experience levels in Atlanta, Georgia.  The Receiver and the professionals at HFC are respected by their peers for their work in receiverships, bankruptcies, turn-arounds, and similar financial structuring work.  Likewise, the attorneys at Troutman Sanders primarily responsible for this case specialize exclusively in the practice of civil trial law and have many years of experience in cases involving securities and financial fraud. The practice of these attorneys regularly includes the representation of receivers. The attorneys from Troutman Sanders are recognized and respected in this community.  For additional information regarding the experience of the attorneys and professionals working on this receivership, a brief summary of experience for each attorney and professional whose time is reflected in Exhibits D through F, as well as each professional's standard hourly rate and discounted rate for this receivership, is attached hereto as Exhibit G.

9

17.

The fees and expenses that are the subject of this application include all of the fees and expenses of the Receiver Team for the relevant time period.  They do not include the fees and expenses of professionals who have been engaged separately by the SJK Absolute Return Fund, Ltd. and the SJK Long/Short Equity Fund, Ltd.  As described more fully in the Receiver's First Interim Report [ECF No. 55] and the Receiver's recent motion regarding Kowalewski's advancement and indemnification demands [ECF No. 87], these two Funds are Cayman Island's entities with independent Board of Directors' members and Cayman Islands' counsel.  For the most part, the specific fees and expenses incurred by these Funds are separate from and independent of the receivership, and these fees and expenses have been and will continue to be paid in the ordinary course by the Funds.  The SJK Absolute Return Fund, Ltd also was required to engage Delaware counsel in connection with Kowalewski's advancement and indemnification demands.  These fees also will be paid in the ordinary course.

C.     **Description of Services Covered by Application**

18.

The services performed in this case have required professionals who are experienced in dealing with the issues that arise in the course of receiverships,

10

including: specialized knowledge of the substantive and procedural law applicable to receiverships; formal and informal processes for obtaining, assimilating and analyzing information; electronic data recovery, preservation and analysis; forensic financial analysis and funds tracing; asset administration and liquidation; and obtaining information from and communicating with investors.  The Receiver, Troutman Sanders, and HFC all have considerable experience in such areas.

19.

The amount of the fees and expenses sought in this application reflects the nature, scope and complexity of the work necessary to properly administer the Receiver Estate.  While this case involves a single receivership, it is, from a time and expense perspective, akin to several significant matters.  Prior to his appointment, the Receiver expected this receivership to involve the relatively straightforward liquidation of and distribution from the five "<u>SJK Funds</u>:" (1) the SJK Absolute Return Fund, Ltd. (the "<u>Offshore Absolute Return Fund</u>"); (2) the SJK Long/Short Equity Fund, Ltd. (the "<u>Offshore Long/Short Equity Fund</u>;" together with the Offshore Absolute Return Fund, the "<u>Offshore Funds</u>"); (3) the SJK Absolute Return Fund, LLC (the "<u>Onshore Absolute Return Fund</u>"); (4) the SJK Long/Short Equity Fund, LLC (the "<u>Onshore Long/Short Equity Fund</u>;" together with the Onshore Absolute Return Fund, the "<u>Onshore Funds</u>"); and (5)

11

the SJK Special Opportunities Fund, LP (the "<u>SOF</u>").  Soon after being appointed as Receiver and throughout the course of his appointment to date, a variety of issues have arisen which make this receivership significantly more complex than expected, including:

*Kowalewski's Post-Receivership Actions.*  Upon the Receiver's appointment, Kowalewski indicated a willingness to cooperate with the Receiver, to provide information necessary for the Receiver to administer the Receiver Estate, and even to assist the Receiver with the disposition of certain of the assets of the SOF.  The Receiver, however, has since determined that much of the information provided by Kowalewski was inaccurate and incomplete, at best.

For example, on February 10, 2011, Kowalewski represented to the Receiver that the Argonaut Group, LLC, a newly formed entity with which Kowalewski is affiliated, would, among other things: (a) purchase the SOF's Velocity Sports franchise for $225,000; (b) purchase the SOF's interest in J. Destiny, Inc. for $343,000; (c) assume SJK's office lease; and (d) purchase the SOF's Pawley's Island beach house for the same amount that the SOF had invested in it – *i.e.*, $4.1 million.  When pressed for information regarding Argonaut's financing and the sources thereof, Kowalewski represented that such information was forthcoming. Kowalewski never provided the requested information and, based on deposition

testimony provided by Kowalewski's wife and brother-in-law, it appears that Argonaut never had the financing in place to effect any of these transactions, let alone all of them.

In addition to providing misinformation, Kowalewski also has taken actions that have hindered the Receiver's orderly administration of the Receiver Estate. Two of these actions – Kowalewski's recent contact with investors in which he provided false information and Kowalewski's demand for advancement and indemnification from the Offshore Funds – are set forth in more detail in recent filings made by the SEC and the Receiver.  [ECF Nos. 61, 78, 81, 86, 87.]

These and other misrepresentations and actions taken by Kowalewski have increased the expenses of this receivership in a number of ways.  The Receiver has been required to address each issue as it arises.  Moreover, because Kowalewski has provided unreliable information and taken improper actions while, at the same time, making clear that he intends to second-guess and challenge every decision and action of the Receiver, the Receiver Team has been required to investigate and analyze every issue that arises at a level of detail that would not otherwise be necessary in a receivership like this.  Simply put, though Kowalewski's actions will not impact the decisions of the Receiver and may not change the ultimate outcome of this receivership, they already have substantially increased the

13

Receiver Team's fees and will continue to do so as long as Kowalewski's actions go unchecked.

*SOF Assets*.   As set forth in more detail in the Receiver's First Interim Report, other than a residence on Pawleys Island, South Carolina, the assets of the SOF consist primarily of business ventures, including joint business ventures with several third parties.  In conducting its investigation, the Receiver Team discovered that the value of these business ventures was substantially less than the amount of the SOF investments, and did not even approach the value placed upon them by SJK.  Moreover, the Receiver Team discovered that many of these assets had unique and previously undisclosed issues, which also are set forth in more detail in the Receiver's First Interim Report.  Addressing these unique issues and working with the SOF's business partners has increased the complexity of this receivership.

*Kowalewski's Tax Liability*.  After his appointment, the Receiver learned that Kowalewski – personally, and through SJK, which is a single member limited liability company – may have had in excess of $10 million in taxable earnings in 2010 on which he has paid no taxes.  Issues related to Kowalewski's tax liability, including what assets will be available to satisfy the liability, the impact of Kowalewski's tax liability on the Receiver Estate, and other related matters have made the administration of the Receiver Estate more difficult than expected.  These

14

issues are further complicated by the fact that, as discussed below, Kowalewski's wife has claimed an ownership interest in the real property owned by Kowalewski, as well as certain "investments" Kowalewski made in the SJK Funds.

*Ownership Issues Regarding Real Estate and Assets.*  Kowalewski's assets include two residences and $2.9 million in "investments" made by Kowalewski in the SJK Funds.  Based on the Receiver's investigation and analysis, it appears the residences were purchased and investments made exclusively with funds transferred from the SOF to SJK and then to Kowalewski – *i.e.,* investor funds. Kowalewski's wife, however, has claimed an ownership interest in all of these assets.  Though the Receiver does not believe that Kowalewski's wife has a legitimate ownership interest in any of these assets, her claims of ownership, coupled with the tax issues addressed above, have made the administration of these assets, including their potential sale, more complicated.

*Administration of Offshore Funds.*  The Offshore Funds are Cayman Islands' entities, are regulated by the Cayman Islands' Monetary Authority ("CIMA"), and subject to the jurisdiction of Cayman Islands' courts.  The Receiver Team has worked with Cayman Islands' counsel to the funds to ensure that the administration of the Offshore Funds' investments complies with Cayman Islands' law.  Kowalewski's demands for advancement and indemnification from the

15

Offshore Funds have significantly increased the Receiver Team's activities related to the administration of the Offshore Funds.

_Hickory Springs and Shelter Bay_.  In late December 2010, the Hickory Springs Retirement Plan invested $7 million in the Offshore Absolute Return Fund, and the Shelter Bay Fund, LP invested $600,000 in the Onshore Absolute Return Fund.  Both of these investments were to be effective January 1, 2011, and the investors' ownership interests were to be determined based on the two Funds' net asset values ("NAV") as of December 31, 2010.  After being appointed, the Receiver learned that these investors were not issued ownership interests prior to the filing of this litigation.  Because the NAV of the Onshore and Offshore Absolute Return Fund is based, in part, on the NAV of the SOF (which was substantially overstated by SJK), the Receiver is working with investors to reach an agreement regarding the appropriate treatment of these two investments.

20.

The amount of the fees and expenses sought in this Application is reasonable in light of the amount involved in the receivership, the complexity of the issues addressed by the Receiver Team, and the progress of the Receiver Team during the applicable time period.

2279070v1

21.

The extensive work performed by the Receiver Team during the first month of this Receivership is described in more detail in the Receiver's First Interim Report.  That Report and the work described therein have served as the foundation for the Receiver Team's subsequent efforts and the Receiver Team's communications with investors and other interested parties.  Since the filing of the First Interim Report, the Receiver Team has continued the work described in the Report and has begun to address the issues described above in Paragraph 17. Among other things, the Receiver Team has:

     a.     Secured the assets of the Receiver Estate;

     b.     Interviewed SJK's and SOF's former employees;

     c.     Communicated with investors regarding the Receiver Team's progress and the issues that have arisen;

     d.     Reviewed SJK's files regarding the SOF's assets, communicated with all of the SOF's business partners and addressed various and unique issues related to each of the SOF's assets;

     e.     Communicated with all managers of the third-party funds in which the SJK Funds were invested, analyzed the terms of the SJK Funds'

investments in these third-party funds, and begun the process of redeeming the SJK Funds' interests in these funds.

f.      Addressed the various complicating issues caused by Kowalewski's misrepresentations and actions, and attempted to limit the impact of Kowalewski's actions on the Receiver Estate.

g.      Coordinated efforts with the Offshore Funds' Cayman Islands' counsel and ensured compliance with Cayman Islands' laws and regulations to facilitate the orderly administration of the Receiver Estate.

h.      Participated in document and deposition discovery.

i.      Instituted data preservation and forensic recovery activities to make certain that all relevant data is located and preserved.

j.      Organized, reviewed and supplemented SJK's files.

k.      Began the process of taking control of, managing, and addressing legal and other issues related to the Receiver Estate.

l.      To the extent possible, recovered, organized and analyzed the finance, accounting, and banking records of the Receiver Estate;

m.      Recovered $1,880,898.08 from bank accounts, note payments, and other sources.

n.      Through research and interviews, identified other people and entities in possession of assets that may be subject to the Court's freeze order.

o.      Prepared and served over 30 document subpoenas or freeze letters on financial institutions and other third-parties.

p.      Began investigating potential claims against third parties, including Kowalewski's wife and other relatives.

q.      Developed a Creditor Claim Form and Employee Claim Form to facilitate a fair and accurate distribution.

r.      Conducted analysis, which is ongoing, of tax issues.

s.      Conducted forensic analysis, which is ongoing, of the relevant financial transactions for the purpose of determining the various sources and uses of monies under Defendants' control during the course of the offerings that form the basis of this action.

All of these activities are set forth in detail in the invoices attached to this application.

22.

The Receiver requests that the Court authorize the payment of all fees and expenses incurred as set forth in Paragraph 14, above (and more fully described in

19

the attached redacted statements).  The reasonableness of the amounts sought by

this application is demonstrated by the amount and type of work performed by the

Receiver Team, the complexity of the issues, and the progress that was made by

the Receiver Team during the applicable time period.  All fees and expenses will

be paid from the Receiver Estate.  A proposed Order granting the relief requested

is attached as <u>Exhibit H</u> hereto.

23.

Pursuant to Section XVI of the February 2, 2011 Receivership Order, prior

to the filing of this application, counsel for the Receiver consulted with the SEC

and counsel for Kowalewski by providing them a copy of this application.  The

SEC has reviewed the application and has indicated that it does not object to the

fees sought herein.

WHEREFORE, S. Gregory Hays, Receiver, respectfully requests that the

Court review and approve the fees for professional services rendered and costs

advanced by the Receiver; Hays Financial Consulting, LLC; and Troutman

Sanders LLP for the time period from February 1, 2011 through April 30, 2011,

and authorize payment of such approved fees and expenses as requested herein.

20

This 1st day of July, 2011.

/s/ *J. David Dantzler, Jr.*
J. David Dantzler, Jr.
Georgia Bar No. 205125
david.dantzler@troutmansanders.com
Thomas B. Bosch
Georgia Bar No. 068740
tom.bosch@troutmansanders.com
Natalie D. Sacha
Georgia Bar No. 558276
natalie.sacha@troutmansanders.com

**TROUTMAN SANDERS LLP**
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
(404) 885-3000 (phone)
(404) 885-3900 (fax)

*Attorneys for S. Gregory Hays, Receiver*

## **CERTIFICATE OF COMPLIANCE OF LOCAL RULE 7.1D**

I hereby certify that the foregoing has been prepared in a Times New Roman 14 point font, one of the font and point selections approved by the Court in Local Rule 5.1B.

/s/ *J. David Dantzler, Jr.*
J. David Dantzler, Jr.
Georgia Bar No. 205125

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing **FIRST APPLICATION OF RECEIVER FOR AUTHORITY TO PAY PROFESSIONAL FEES AND TO REIMBURSE COSTS** was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

A copy of this filing also has been provided by electronic mail to all investors in the SJK Funds and the Special Opportunities Fund.

This 1st day of July, 2011.

/s/ *J. David Dantzler, Jr.*
J. David Dantzler, Jr.
Georgia Bar No. 205125