IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | CIVIL ACTION NO. 1:11-cv-0056-TCB |
| vs. | |
| STANLEY J. KOWALEWSKI and SJK INVESTMENT MANAGEMENT, LLC, | |
| Defendants. | |

## RECEIVER'S MOTION FOR ORDER REQUIRING STANLEY J. KOWALEWSKI AND TRACI KOWALEWSKI TO TURN OVER ASSETS OF RECEIVER ESTATE AND FOR ACCOUNTING AND BRIEF IN SUPPORT

S. Gregory Hays, the "Receiver" for Stanley J. Kowalewski

("Kowalewski"), SJK Investment Management, LLC ("SJK"), the SJK Special

Opportunities Fund, LP (the "Special Opportunities Fund"), and all of their assets

(collectively, the "Receivership Estate") files this Motion for Order Requiring

Stanley J. Kowalewski and Traci Kowalewski to Turn Over Assets of Receiver

Estate and for Accounting and Brief in Support.  In support of this Motion, the Receiver shows this Court as follows:[1]

## THE SEC ENFORCEMENT ACTION
## AND THIS COURT'S ORDERS

1.     This action was initiated by the Securities and Exchange Commission (the "SEC") on January 6, 2011 [ECF Nos. 1 and 2].

2.     On January 6, 2011, the Court entered an Order to Show Cause, Temporary Restraining Order, Order Freezing Assets, Order Requiring an Accounting, Order Prohibiting Destruction of Documents, and Order Expediting Discovery (the "Freeze Order") [ECF No. 5].  Among other things, the Freeze Order froze all assets owned or controlled by Defendants Kowalewski and SJK.

3.     On January 26, 2011, the Court entered a Consent Order Preliminarily Enjoining Defendants and Ordering Other Relief [ECF No. 23], which extended until further notice the relief provided in the Freeze Order.

4.     Pursuant to Orders dated February 2, 2011 [ECF No. 37] and March 8, 2011 [ECF No. 59] (the "Receivership Orders"), S. Gregory Hays was appointed

---

[1] The Receiver will supplement this motion with declarations and other record evidence, as appropriate and necessary.

as Receiver for Kowalewski, SJK, the Special Opportunities Fund, and all of their
assets (collectively, the "Receiver Estate").

5.      As set forth more fully in the Receiver's Notice of Defendant
Kowalewski's Failure to Comply with Order Appointing Receiver and Continuing
Asset Freeze, both Stanley and Traci Kowalewskis' actions with respect to the
Henson Farms House violate various provisions of the Freeze Order and
Receivership Orders.

## THE INVESTMENT OFFERINGS
## AND DEFENDANTS' FRAUD

6.      Prior to the filing of this action by the SEC and the appointment of the
Receiver, Kowalewski, through SJK, managed and advised "fund of fund" hedge
funds: the SJK Absolute Return Fund, Ltd. (the "Offshore Absolute Return Fund");
the SJK Absolute Return Fund, LLC (the "Onshore Absolute Return Fund"); the
SJK Long/Short Equity Fund, Ltd.; and the SJK Long/Short Equity Fund, LLC.
Collectively, these funds are referred to as the "SJK Funds").

7.      Kowalewski also created and managed the Special Opportunities
Fund.

8.      Kowalewski and SJK made numerous false and misleading statements
to investors and potential investors in the SJK Funds.

3

9.      Each of the SJK Funds was marketed to investors via a Private
Placement Memorandum.  Among other things, the Private Placement Memoranda
for the Offshore Absolute Return Fund and Onshore Absolute Return Fund
provided that "the Fund may allocate up to a maximum of 15% of its total capital
to a single Investment Fund."  (Private Placement Memorandum of SJK Absolute
Return Fund, Ltd., Effective as of July 2009 ("Offshore PPM") at 17; SJK
Absolute Return Fund, LLC, Private Placement Memorandum, Effective July 6,
2009 ("Onshore PPM") at 10.)  Each Private Placement Memorandum also
committed to investors that "substantially all" of the Funds' assets would be
invested with "Investment Funds sponsored by unaffiliated investment managers."
(Offshore PPM at 15; Onshore PPM at 9.)

10.     Defendants' prior submissions in this litigation show that, contrary to
the Private Placement Memoranda, both the Offshore Absolute Return Fund and
Onshore Absolute Return Fund allocated more than 15% of their total capital to the
Special Opportunities Fund.  (January 31, 2011 Declaration of Michael Fulcher
("Fulcher Dec.") at Exhibit 5) (submitted to the Court on January 31, 2011).)[2]

---

[2] Based on Defendants' filings, the Offshore Absolute Return Fund received total
investor contributions of $48,759,820.93, of which $14,273,024.00 – 27.2% – was
transferred to the Special Opportunities Fund.  Similarly, Defendants' filings show
that the Onshore Absolute Return Fund received total investor contributions of

(footnote continued on next page)

These allocations were not disclosed to investors and potential investors in the SJK Funds.

11.     SJK and Kowalewski also caused false and misleading monthly account statements to be issued to investors in the Offshore Absolute Return Fund and Onshore Absolute Return Fund.

12.     Each month, Kowalewski and SJK caused the administrator of the SJK Funds to issue statements to each investor in the SJK Funds, which purported to show the net asset value of the investor's investment in a particular SJK Fund. Because the Offshore Absolute Return Fund and Onshore Absolute Return Fund were invested in the Special Opportunities Fund, the net asset value of these Funds was based, in part, on Kowalewski's and SJK's reported valuation of the Special Opportunities Fund.

13.     After his appointment, the Receiver endeavored to calculate the correct net asset value, as of December 31, 2010, for each of the SJK Funds. The last net asset value calculated by SJK and Kowalewski for the Special Opportunities Fund was for the month ended November 30, 2010, and showed a

---

*(footnote continued from previous page)*

$21,030,901.58, of which $3,378,000.00 – 16.1% – was transferred to the Special Opportunities Fund.  (Fulcher Dec. at Exhibit 5.)

net asset value of $24,416,706.29.  This net asset value was provided by

Kowalewski and SJK to the SJK Funds' administrator and was used by the

administrator to determine net asset values of the Offshore Absolute Return Fund

and the Onshore Absolute Return Fund.

14.    As a result of his investigation, the Receiver determined that

Kowalewski and SJK's November 30, 2010 valuation of the Special Opportunities

Fund was greatly inflated and that the purported assets of the Special Opportunities

Fund had relatively little value.  The Receiver also determined that the net asset

value attributed by SJK to the Special Opportunities Fund had been overstated for

the majority of 2010,[3] with the amount of the overstatement increasing on a

monthly basis over the latter part of 2010.

15.    Given the overall circumstances of the case and the Receiver's

knowledge of the facts as they existed as of December 31, 2010, the Receiver

determined that the net asset value of the Special Opportunities Fund as of

December 31, 2010 was $4,655,447.19.  There were no material changes to the

assets of the Special Opportunities Fund between November 30, 2010 and

December 31, 2010.  Therefore, the Offshore Absolute Return Fund and Onshore

---

[3] The Special Opportunities Fund was created on November 30, 2009 and did not
engage in any significant activity prior to 2010.

Absolute Return Fund were overvalued by a combined total of almost $20 million in November 2010.

16.     Kowalewski and SJK also provided other false and misleading information to investors and prospective investors regarding the SJK Funds.  The false information and related omissions are described in the following previously filed declarations:

- January 19, 2011 Declaration of Gregory J. Schaack [ECF No. 18-4].  Mr. Schaack is the Chief Financial Officer and Treasurer of St. Joseph's/Candler Health System, Inc.  Entities affiliated with St. Joseph's/Candler had reported account balances of over $45 million in the SJK Funds as of November 2010.

- January 17, 2011 Declaration of Valerie W. Reid [ECF No. 18-3].  Ms. Reid is the Treasurer of Hickory Springs Manufacturing Company, whose Amended and Restated Retirement Plan Invested $7 million in the Offshore Absolute Return Fund effective January 1, 2011.

- January 24, 2011 Declaration of Todd K. Borton [ECF No. 20-1].  Mr. Borton introduced Hickory Springs Manufacturing Company to Kowalewski and SJK.

- January 21, 2011 Declaration of Brandon Smith [ECF No. 18-5].  From June 2010 through January 14, 2011, Mr. Smith served as a Senior Investment Analyst for SJK.

- January 24, 2010 Declaration of Ernest V. Montford [ECF No 20-2].  Mr. Montford served as an investment advisor to a majority of the institutional investors in the SJK Funds.

## TRANSFERS TO KOWALEWSKI AND KOWALEWSKI'S ASSETS

17.    Based on a review of SJK's records, it appears the overvaluation of the Special Opportunities Fund and, in turn, the Offshore Absolute Return Fund and Onshore Absolute Return Fund resulted in part from artificial increases in the value of the Special Opportunities Fund recorded by Kowalewski and SJK to offset undisclosed transfers made by the Special Opportunities Fund to SJK.  Most of the money transferred from the Special Opportunities Fund to SJK was subsequently transferred to Kowalewski.

18.    From August 2009 through January 6, 2011, Kowalewski withdrew directly or had paid on his behalf by SJK a total of $12,524,467.20.  (August 24, 2011 Declaration of James R. Begnaud [ECF No. 113-2] at ¶ 5.)  Of that amount, Kowalewski returned certain amounts to SJK and the Special Opportunities Fund, resulting in a net amount of $8,420,923.45 withdrawn directly by Kowalewski or paid by SJK on his behalf.  (*Id.*)  These transfers were not disclosed to investors or potential investors in the SJK Funds.

19.    Kowalewski used the $8.4 million misappropriated from the Special Opportunities Fund to, among other things, acquire assets, including:

- A house located at 5802 Henson Farms Road, Summerfield, NC (the "Henson Farms House").  The Henson Farms House is titled jointly in the name of Kowalewski and his wife, Traci

Kowalewski.  It was purchased by the Kowalewskis from the Special Opportunities Fund in October 2010.

- A house located at 5203 Southwind Road, Greensboro, North Carolina (the "Southwind Road House").  The Southwind Road house is titled in the name of Kowalewski, but his wife, Traci Kowalewski, has indicated that she may claim a joint ownership interest in the house.

- $2.9 million in investments in the SJK Funds and the Special Opportunities Fund.  These investments were made jointly in the name of Kowalewski and his wife.

20.    Kowalewski acquired these and other assets with money misappropriated from the Special Opportunities Fund – i.e., the proceeds of the investment offerings at issue in this litigation.  Moreover, Mrs. Kowalewski did not contribute any money towards the acquisition of these assets.  Therefore, all of these assets are part of the Receiver Estate and subject to the Freeze Order and the Receivership Orders.  These assets also are imposed with a constructive trust for the benefit of the Special Opportunities Fund.  *See Capps v. Blondeau*, 2010 NCBC 8, 70 (N.C. Super. Ct. 2010) (citing *Wilson v. Crab Orchard Dev. Co., Inc.*, 276 N.C. 198, 211-212, 171 S.E.2d 873 (1969)).

### THE KOWALESKIS' REMOVAL AND SALE OF ASSETS
### FROM THE HENSON FARMS HOUSE

21.    On the afternoon of Friday, August 26, 2011, the Receiver was informed by neighbors of Kowalewski that the Kowalewskis had been conducting

"estate sales" over several weekends, had a full sized moving truck at the Henson Farms House on a separate weekend and that they had apparently sold light fixtures and other items normally thought to belong to the house.  The Receiver was further informed that another "estate sale" was scheduled for Saturday, August 27, 2011, and that lighting, cabinets, and other fixtures were being sold at these sales. (August 29 Declaration of S. Gregory Hays, Receiver ("Hays Dec.") [ECF 115-1] at ¶¶ 9-10.)

22.    On August 27, 2011, the Receiver retained Mark Scott, a North Carolina private investigator, to inspect the Henson Farms House.  (*Id.* at ¶ 12.)

23.    On August 29, 2011, Mr. Scott obtained access to the Henson Farms House.  Among other things, Mr. Scott observed that that there was very little furniture in the house.  Most of the furniture was in the garage and appeared to be for sale.  Mr. Scott also found other evidence – e.g., signs and handwritten price tags – indicating that one or more "estate sales" had been conducted at the property, which is consistent with what he had been told by the Kowalewskis' neighbors during a previous visit on August 27, 2011.  (August 29, 2011 Declaration of Mark Scott ("Scott Dec.") [ECF No. 117] at ¶¶ 5-6.)

24.    Mr. Scott also confirmed that that fixtures and appliances had been removed and that substantial damage had been done to the house.  More specifically:

- Kitchen appliances, cabinetry and counter-tops were not in place and had been removed from the property.

- Some of the bathroom sinks and vanities were not in place and had been removed from the property.

- Many of the light fixtures were not in place and had been removed from the property.

- A number of interior doors were not in place and had been removed from the property.

- Wall mounted speakers were not in place and had been removed from the property.

(*Id.* at ¶ 7 and Exhibit 1.)

25.    On information and belief, the damage done by the Kowalewskis to the Henson Farms House will be very expensive to repair in order to return the house to marketable condition and, if not repaired, will reduce the market value of the house significantly.[4]

---

[4] The Receiver has requested that the original builder of the Henson Farms House, Combs, Inc., provide an estimate for restoring the house to its prior condition.

## THE RECEIVER'S DEMAND FOR AN
## ACCOUNTING AND TURNOVER

26.     Prior to August 26, 2011, the Receiver was not aware that the

Kowalewskis were removing or selling furniture and fixtures located at the Henson

Farms House and had not given permission to anyone, including the Kowalewskis,

to remove or sell furniture and fixtures located at the Henson Farms House.  (Hays

Dec. at ¶¶ 14-16.)

27.     On Sunday, August 28, 2011, the Receiver's counsel sent an e-mail to

counsel for each of the Kowalewskis demanding an accounting of all furniture,

fixtures, and other assets removed from the Henson Farms House, along with the

turnover of all proceeds of the sales of any such assets.  (*Id.* at ¶ 18.)  A true and

correct copy of the August 28, 2011 email is attached hereto as Exhibit A.

28.     As of the date of this filing, neither Stanley nor Traci Kowalewski has

provided an accounting or turned over the proceeds of the "estate sales."

## RELIEF REQUESTED

29.     Section XXI of the February 2, 2011 Receivership Order provides:

> IT IS FURTHER ORDERED that this Court shall retain
> jurisdiction of this action for all purposes.  The Receiver
> is hereby authorized, empowered and directed to apply to
> this Court, with notice to the Commission and
> Defendants, named in the first paragraph of this Order,
> above, for issuance of such other orders as may be

necessary and appropriate in order to carry out the
mandate of this Court.

30.     This Court's power to supervise an equity receivership and determine

the appropriate action to be taken in the administration of the receivership is

"extremely broad." *SEC v. Hardy*, 803 F.2d 1034, 1038-39 (9th Cir. 1986); *see*

*SEC v. Pension Fund of America, L.C.*, 377 Fed. Appx. 957, 961 (11th Cir. 2010)

("District courts have 'broad powers and wide discretion to determine the

appropriate relief in an equity receivership.'") (quoting *SEC v. Elliott*, 953 F.2d

1560, 1569-70 (11th Cir. 1992)); *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368 (5th

Cir. 1982) (noting the broad powers inherent in a federal court supervising an

equity receiver).

31.     The Court's discretion includes the decision to use summary

proceedings to determine appropriate relief. *SEC v. Basic Energy and Affiliated*

*Resources, Inc.* 273 F.3d 657, 668 (6th Cir. 2001); *SEC v. Elliot*, 953 F.2d 1560,

1566 (11th Cir. 1992). The use of summary proceedings furthers a receivership's

primary purpose to promote the orderly and efficient administration of the estate

for the benefit of investors and other creditors and avoid the formalities of plenary

proceedings that would slow down the resolution of disputes. *See, e.g., SEC v.*

*Hardy*, 803 F.2d 1034, 1037-40 (9th Cir. 1986). Moreover, summary proceedings

reduce litigation costs, and, in turn, preserve a greater amount of the receivership assets for distribution. *Id.*

32.     Here, Kowalewski's ownership interest in the Henson Farms House clearly is subject to the Freeze Order and the Receivership Orders, is an asset of the Receiver Estate, and is imposed with a constructive trust for the benefit of the Special Opportunities Fund.

33.     Traci Kowalewski's ownership interest in the Henson Farms House was funded entirely with the proceeds of the investment offerings at issue in this litigation – i.e., money diverted from the Absolute Return Funds to the Special Opportunities Fund and, in turn, to SJK and Kowalewski.  Consequently, Traci Kowalewski's ownership interest in the Henson Farms House also is subject to the Freeze Order and the Receivership Orders, is an asset of the Receiver Estate, and is imposed with a constructive trust for the benefit of the Receiver Estate.

34.     In sum, the Stanley and Traci Kowalewski have violated the provisions of the Freeze Order and Receivership Order by taking control over and dissipating the assets of the Receiver Estate without the permission of the Receiver or the Court, and the Receiver Estate has been harmed by the actions of the Kowalewskis.

WHEREFORE, the Receiver respectfully requests that this Court immediately enter an order requiring Stanley J. Kowalewski and Traci Kowalewski to:

1.   Provide an accounting of:

- All assets, including furniture, fixtures, jewelry, and other personal property removed by them or with their knowledge and permission from the Henson Farms House since January 6, 2011;

- The current location of all of the assets identified;

- Which assets have been sold to third-parties and the purchaser of each asset; and

- The sale price of each asset sold;

2.   Immediately turnover to the Receiver all proceeds of the sales of assets removed from the Henson Farms House;

3.   Jointly and severally pay the expenses incurred by the Receiver Estate in restoring the Henson Farms House to its previous condition; and

4.   Ordering such other and further relief as the Court deems appropriate.

This _____ day of August, 2011.

/s/ *J. David Dantzler, Jr.*
J. David Dantzler, Jr.
Georgia Bar No. 205125
david.dantzler@troutmansanders.com
Thomas B. Bosch
Georgia Bar No. 068740
tom.bosch@troutmansanders.com
Natalie D. Sacha
Georgia Bar No. 558276
natalie.sacha@troutmansanders.com

**TROUTMAN SANDERS LLP**
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
(404) 885-3000 (phone)
(404) 885-3900 (fax)

*Attorneys for S. Gregory Hays, Receiver*

## CERTIFICATE OF COMPLIANCE OF LOCAL RULE 7.1D

I hereby certify that the foregoing has been prepared in a Times New Roman

14 point font, one of the font and point selections approved by the Court in Local

Rule 5.1B.

/s/ *J. David Dantzler, Jr.*
J. David Dantzler, Jr.
Georgia Bar No. 205125

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **RECEIVER'S MOTION FOR ORDER REQUIRING STANLEY J. KOWALEWSKI AND TRACI KOWALEWSKI TO TURN OVER ASSETS OF RECEIVER ESTATE AND FOR ACCOUNTING AND BRIEF IN SUPPORT** was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

A copy of this filing also has been provided by electronic mail to all investors in the SJK Funds, and to William Hill, counsel for Traci Kowalewski, who has agreed to accept service on her behalf.

This _____ day of August, 2011.

/s/ *J. David Dantzler, Jr.*
J. David Dantzler, Jr.
Georgia Bar No. 205125

# EXHIBIT A

## Dantzler, David

| | |
|---|---|
| **From:** | Dantzler, David |
| **Sent:** | Sunday, August 28, 2011 1:13 PM |
| **To:** | whill@frazierlawnc.com; trtoddjr@ttoddlaw.com |
| **Cc:** | ghays@haysconsulting.net; ruea@sec.gov; kimpau@sec.gov; Bosch, Thomas B. |
| **Subject:** | SEC v. Kowalewski - RECEIVER'S NOTICE AND DEMAND FOR ACCESS AND ACCOUNTING |

**Importance:**  High

Tom and Bill,

As Tom Bosch indicated on Friday, we learned late last week for the first time that the Kowalewskis had moved from the Henson Farms house and, apparently, were removing and/or selling furniture and fixtures located at the property. Despite the demand that no further sale take place, it appears that additional assets were removed yesterday (Saturday, August 27th).  We have now had a visual inspection of the premises performed and confirmed that it has been vacated, virtually all furniture has been removed, and fixtures such as cabinets and lighting are missing.  According to several neighbors, "estate" or "moving" sales have been advertised and conducted over several weekends in August.

This conduct violates the provisions of various court orders related to Mr. Kowalewski's assets and the receivership.  At no time was the Receiver informed or consulted by either of your clients.  Moreover, it is abundantly clear that each of them was aware that the Henson Farm house, as well as much of its contents, are assets of the Receiver Estate. Accordingly, we have informed the SEC and intend to inform Judge Batten of your clients' conduct and seek all appropriate remedies.

The Receiver has arranged for an inspection of the interior of the Henson Farms house tomorrow morning.  The Kowalewskis should arrange for the house to be open by 9:00 a.m. on Monday, August 29, 2011.  Please let us know how that will be accomplished.  The locks will be changed tomorrow and the Kowalewskis will no longer have access. Nothing else should be removed from the house with express permission of the Receiver.

The Receiver demands an immediate accounting from both Stan and Traci Kowalewski of the following:

1. All assets – i.e., furniture, fixtures, jewelry and other personalty – removed by them or with their knowledge and permission from the Henson Farms house since the date of the initial order freezing the assets of Mr. Kowalewski;

2. The current location of the identified assets;

3. Which of the assets have been sold to third-parties and the purchaser of each such asset;

4. The sale price of each asset sold;

5. Immediate turnover to the Receiver of all proceeds of the sale of assets located at the Henson Farms house.

Your clients' failure to comply with this request by 5:00 p.m. on Monday, August 29, 2011 will be deemed to be a refusal to do so.  Nothing herein is intended to be nor should be construed to be a waiver, limitation or other modification of any right, claim or remedy that the Receiver may have against either of the Kowalewskis.

You should also be aware that we have reviewed the inventory taken of the assets located at the Henson Farms house. The distinctive ring that was purchased in or about June 2010 for between $37,000 and $47,000 is not listed.  Please tell us where the ring is.

If you would like to discuss this further today, please let me know.  I will be driving this afternoon, but will have my Blackberry.

David


J. David Dantzler, Jr.
Troutman Sanders LLP
Bank of America Plaza
Suite 5200
600 Peachtree Street, N.E.
Atlanta, Georgia  30308-2216

david.dantzler@troutmansanders.com
(Direct) 404-885-3314
(Fax) 404-962-6799


*This message may be protected by the attorney-client privilege and/or work product doctrine.  If you believe that it has been sent to you in error, do not read it.  Please reply to the sender that you have received the message in error.  Then delete it.  Thank you.*