IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | CIVIL ACTION NO. 1:11-cv-0056-TCB |
| vs. | |
| STANLEY J. KOWALEWSKI and SJK INVESTMENT MANAGEMENT, LLC, | |
| Defendants. | |

## SECOND APPLICATION OF RECEIVER FOR AUTHORITY TO PAY PROFESSIONAL FEES AND TO REIMBURSE COSTS

S. Gregory Hays, Receiver for Defendants Stanley J. Kowalewski; SJK Investment Management, LLC; the SJK Special Opportunities Fund, LP; and all of their assets, files his second application for authority to pay professional fees for services rendered and to reimburse costs. This application seeks the authority to pay the fees and reimburse the expenses of the Receiver, Hays Financial Consulting, and Troutman Sanders for services rendered from May 1, 2011 through July 31, 2011.

In support of this application, the Receiver respectfully shows the following:

# BACKGROUND

## 1.

Pursuant to Orders dated February 2, 2011[ECF No. 37] and March 8, 2011 [ECF No. 59] (the "Receivership Orders"), S. Gregory Hays was appointed as Receiver for Stanley J. Kowalewski ("Kowalewski"), SJK Investment Management, LLC ("SJK"), the SJK Special Opportunities Fund, LP (the "SOF"), and all of their assets (collectively, the "Receiver Estate"). The Receivership Orders grant the Receiver broad authority over the organization, management, control, and disposal of the assets of the Receiver Estate.

## 2.

Included in the Receiver's powers is the ability to "employ such employees, accountants, consultants, attorneys and other professionals, including employees of his own professional firm, as are necessary and proper for the administration of the Receiver Estate and the performance of his duties." (Feb. 2, 2011 Order at § XVI.) The Receivership Orders further provide that:

> [t]he Receiver shall seek and obtain the approval of this Court prior to disbursement of professional fees and expenses to himself, his firm or his counsel, by presentation of a written application therefore, and after consultation with the Commission and counsel for the defendants. All costs incurred by the Receiver shall be paid from the Receiver Estate.

(*Id.*)

3.

The Receiver continues to employ the financial consulting firm of Hays Financial Consulting, LLC ("HFC") as his accountants and financial consultants and the law firm of Troutman Sanders LLP ("Troutman Sanders") as counsel to the Receiver. (The Receiver, HFC, and Troutman Sanders are collectively referred to as the "Receiver Team").

4.

The Receiver has made several filings during the period covered by this application, including:

- Receiver's Notice of Intent to Sell Watercraft, filed on May 20, 2011 [ECF No. 80]

- Receiver's Notice of Sale of Real Property by CDLD Holdings, LLC, filed on May 20, 2011 [ECF No. 81]

- Motion for Order Prohibiting Stanley J. Kowalewski from Receiving Advancement or Indemnification or, in the Alternative, Requiring Any Advancement or Indemnification to be Turned Over to the Receiver Pending Final Judgment, filed on May 26, 2011 [ECF No. 87]

- Receiver's Notice of Engagement of Bennett Thrasher to Conduct Audit and Tax Services for the SJK Funds, filed on June 6, 2011 [ECF No. 92]

- Receiver's Investor Distribution Plan and accompanying Motion, filed on July 1, 2011 [ECF No. 102]

- Receiver's Motion for Authorization to Transfer Management of Accounts to the Georgia Ports Authority, filed on July 17, 2011 [ECF No. 104]

- Receiver's Notice of Sale of Real Property by CDLD Holdings, LLC, filed on July 28, 2011 [ECF No. 109]

The Receiver also provided updates to investors via email and memoranda dated May 5, 2011; May 13, 2011; May 31, 2011; June 16, 2011; June 17, 2011; and June 22, 2011, copies of which are attached hereto as <u>Exhibit A.</u> Many of the activities undertaken by the Receiver Team during the period covered by this application are summarized in these pleadings and updates to investors.

5.

As indicated in the Receiver's First Interim Report [ECF No. 55], the investor updates, the First Application of the Receiver for Authority to Pay Professional Fees and to Reimburse Costs [ECF No. 103], the Investor Distribution Plan, and the other filings listed in Paragraph 4, this is a complicated case, which has required and continues to require significantly more effort by the Receiver Team than initially anticipated by the Receiver or the Securities and Exchange Commission (the "<u>SEC</u>"). The professionals working on this case are well aware of the time and expense being incurred and endeavor at all times to work in an efficient and productive manner.

## APPLICATION FOR FEES

**A.** **Basis for Entitlement to Fees**

6.

The Receiver, his financial consultants, and any counsel or accountants are entitled to reasonable compensation for the performance of their duties from the assets held by or in the possession or control of the Receiver Estate, in the amount(s) commensurate with their duties and obligations, plus actual out-of-pocket expenses incurred by them.

7.

The Receivership Order provides that the Receiver and the professionals working with him will apply to the Court for approval to pay professional fees and expenses.

8.

This Application seeks approval for payment of the fees and reimbursement of expenses for the Receiver, HFC, and Troutman Sanders for the time period from May 1, 2011 through July 31, 2011.

9.

In support of this Application, the Receiver respectfully directs the Court's attention to *Ass'n of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357,

1359 (11th Cir. 2006), which sets forth the appropriate test in the Eleventh Circuit

for the determination of a fee award.  The Court in *Ass'n of Disabled Americans*

held:

> In calculating a reasonable attorney's fee award, the court must
> multiply the number of hours reasonably expended on the litigation by
> the customary fee charged in the community for similar legal services
> to reach a sum commonly referred to as the "lodestar."  The court may
> then adjust the lodestar to reach a more appropriate attorney's fee,
> based on a variety of factors, including the degree of the plaintiff's
> success in the suit.

*Id.* (citations omitted).  The amount and reasonableness of the fees and costs

sought to be approved in this Application are addressed below.

10.

As stated in the First Interim Report and the Receiver's First Interim Fee

Application, the Receiver Team is working under a fee structure that includes a

discount from the professionals' standard market rates and, as initially structured, a

$500,000 cap for their professional fees incurred in connection with "core receiver

functions."  In addition, there are "extraordinary activities" that are not within the

fee cap.  Under the Receiver's proposal to the SEC, the Receiver committed to

informing the Court, the SEC, and the investors upon the discovery of facts and

circumstances that materially altered the Receiver's analysis of this fee structure.

11.

As described in communications with the SEC, investor updates, the First
Interim Fee Application, and the Receiver's other recent filings, and set forth in
more detail below, both the core and extraordinary activities have been much more
complex and have required significantly more of the Receiver Team's time and
expertise than initially anticipated. Consequently, despite the Receiver Team's
best efforts to work within the $500,000 estimated cap for core activities, the facts
and circumstances of the receivership have required the Receiver Team to exceed
the cap. The Receiver has consulted with the SEC, and the SEC, in light of the
increased scope of work, does not object to the payment of fees in excess of
$500,000 for core activities. The Receiver Team's time spent on extraordinary
activities also has exceeded the Receiver's and the SEC's initial expectations and
these activities likely will continue to require significant attention from the
Receiver Team going forward.

12.

The Receiver Team has established a billing regimen that will assist the
Court, the parties, and investors in determining how the Receiver Team is
allocating its time for billing purposes between "core" and "extraordinary"
activities. In preparing this fee application, the Receiver Team has endeavored to

allocate its time as accurately as possible between core receivership and extraordinary tasks; however, it is important to note that it is often difficult to allocate fees precisely between these two groups of tasks.  Further, the Receiver Team understands that, regardless of how the fees are categorized, the Receiver Team's activities (and the fees associated therewith) must be limited to matters necessary for the efficient administration of the Receiver Estate.

**B.     Fees and Expenses for Period from May 1, 2011 through July 31, 2011**

13.

For the period from May 1, 2011 through July 31, 2011, the Receiver Estate incurred $347,224.99 in fees and $3,955.26, in expenses, which are broken down as follows:

Core Receivership Fees (In Cap)                    $254,348.53
Fees for Extraordinary Activities (Outside Cap)    $ 92,875.76
Expenses (Outside Cap)                             $  3,955.26
Adjustment to April 2011 HFC Invoice              $    -258.00

| RECEIVER – S. GREGORY HAYS May 2011 – July 2011 | | | | |
|---|---|---|---|---|
| | May 2011 | June 2011 | July 2011 | Total |
| Total Fees – Core | 15,048.00 | 7,992.00 | 5,328.00 | 28,368.00 |
| Total Fees – Extraordinary | 1,836.00 | 2,052.00 | 2,016.00 | 5,904.00 |
| TOTALS | 16,884.00 | 10,044.00 | 7,344.00 | 34,272.00 |

| HAYS FINANCIAL CONSULTING, LLC May 2011 – July 2011 | | | | |
|---|---|---|---|---|
| | May 2011 | June 2011 | July 2011 | Total |
| Total Fees – Core | 30,447.10 | 30,013.20 | 19,515.90 | 79,976.20 |
| Total Fees – Extraordinary | 1,864.30 | 8,262.80 | 4,036.40 | 14,163.50 |
| Expenses | 1,648.00 | 225.24 | 290.96 | 2,164.20 |
| Adjustment to April 2011 Invoice | (258.00) | | | (258.00) |
| TOTALS | 33,701.40 | 38,501.24 | 23,843.26 | 96,045.90 |

| TROUTMAN SANDERS LLP May 2011 – July 2011 | | | | |
|---|---|---|---|---|
| | May 2011 | June 2011 | July 2011 | Total |
| Total Fees – Core | 46,038.94 | 67,485.37 | 32,480.02 | 146,004.33 |
| Total Fees – Extraordinary | 31,247.41 | 16,349.15 | 25,211.70 | 72,808.26 |
| Expenses | 46.13 | 1,641.65 | 103.28 | 1,791.06 |
| TOTALS | 77,332.48 | 85,476.17 | 57,795.00 | 220,603.65 |

Attached hereto as Exhibit B, is a more detailed summary of these fees which shows the monthly amount of fees for the Receiver, HFC, and Troutman Sanders by billing task codes.  All of the Receiver Team's fees are being billed at a discount to standard rates.[1]

---

[1] To reduce expenses to the Receiver Estate, Troutman Sanders has further discounted the rate of Thomas Bosch, the attorney who has been responsible for much of the work in the receivership, from 5% to 10%.

14.

Monthly statements attached hereto as <u>Exhibits C through E</u> contain the following information for the time period of May 1, 2011 through July 31, 2011 for the Receiver, HFC, and Troutman Sanders, respectively: (a) the number of hours worked by each professional; (b) the manner and type of work performed by each professional; and (c) the monetary value assigned to each task performed by each professional. Information protected from disclosure by the attorney-client privilege and attorney work-product doctrine has been redacted from these statements.

15.

The hourly rates reflected in Exhibits C through E are commensurate with the rates charged by other professionals of similar experience levels in Atlanta, Georgia. The Receiver and the professionals at HFC are respected by their peers for their work in receiverships, bankruptcies, turn-arounds, and similar financial structuring work. Likewise, the attorneys at Troutman Sanders primarily responsible for this case specialize exclusively in the practice of civil trial law and have many years of experience in cases involving securities and financial fraud. The practice of these attorneys regularly includes the representation of receivers. The attorneys from Troutman Sanders are recognized and respected in this

community.  For additional information regarding the experience of the attorneys and professionals working on this receivership, a brief summary of experience for each attorney and professional whose time is reflected in Exhibits C through E, as well as each professional's standard hourly rate and discounted rate for this receivership, is attached hereto as <u>Exhibit F</u>.

16.

The fees and expenses that are the subject of this application include all of the fees and expenses of the Receiver Team for the relevant time period.  They do not include the direct fees and expenses incurred by the: (1) the SJK Absolute Return Fund, Ltd. (the "<u>Offshore Absolute Return Fund</u>"); (2) the SJK Long/Short Equity Fund, Ltd. (the "<u>Offshore Long/Short Equity Fund</u>;" together with the Offshore Absolute Return Fund, the "<u>Offshore Funds</u>"); (3) the SJK Absolute Return Fund, LLC (the "<u>Onshore Absolute Return Fund</u>"); (4) the SJK Long/Short Equity Fund, LLC (the "<u>Onshore Long/Short Equity Fund</u>;" together with the Onshore Absolute Return Fund, the "<u>Onshore Funds</u>").[2]  These fees and expenses included fees charged by SS&C Technologies, Inc., the administrator for each of the SJK Funds and Bennett Thrasher, the SJK Funds' auditor.  These fees and expenses have been and will continue to be paid in the ordinary course.

---

[2] Collectively, these four funds are referred to as the "<u>SJK Funds</u>."

11

17.

This application also does not include the professionals who have been engaged separately by the Offshore Funds. As described more fully in the Receiver's First Interim Report [ECF No. 55] and the Receiver's recent motion regarding Kowalewski's advancement and indemnification demands [ECF No. 87], these two Funds are Cayman Island's entities with independent Board of Directors' members and Cayman Islands' counsel. For the most part, the specific fees and expenses incurred by these Funds are separate from and independent of the receivership, and these fees and expenses have been and will continue to be paid in the ordinary course by the Funds. The SJK Absolute Return Fund, Ltd. also was required to engage Delaware counsel in connection with Kowalewski's advancement and indemnification demands. These fees also were paid in the ordinary course.

18.

The amount of the fees and expenses sought in this application reflects the nature, scope and complexity of the work necessary to properly administer the Receiver Estate. While this case involves a single receivership, it is, from a time and expense perspective, akin to several significant matters. Prior to his appointment, the Receiver expected this receivership to involve the relatively

straightforward liquidation of and distribution from SJK Funds and the SOF. Soon after being appointed as Receiver and throughout the course of his appointment to date, a variety of issues have arisen which make this receivership significantly more complex than expected, including:

*Kowalewski's Post-Receivership Actions.* Upon the Receiver's appointment, Kowalewski indicated a willingness to cooperate with the Receiver, to provide information necessary for the Receiver to administer the Receiver Estate, and even to assist the Receiver with the disposition of certain of the assets of the SOF. The Receiver, however, has since determined that much of the information provided by Kowalewski was inaccurate and incomplete, at best.

In addition to providing misinformation, Kowalewski also has taken actions that have hindered the Receiver's orderly administration of the Receiver Estate. Two of these actions – Kowalewski's contact with investors in which he provided false information and Kowalewski's demand for advancement and indemnification from the Offshore Funds – required a substantial amount of the Receiver Team's attention during the period covered by this fee application. The Receiver Team also worked with the SEC on issues related to Kowalewski's violation of this Court's prior orders by, among other things, withdrawing $100,000 from one of his

bank accounts.  These matters are set forth in more detail in filings made by the SEC and the Receiver.  [ECF Nos. 61, 78, 81, 86, 87.]

Kowalewski's misrepresentations and actions have increased the expenses of this receivership in a number of ways.  The Receiver has been required to address each issue as it arises.  Moreover, because Kowalewski provided unreliable information and took improper actions while, at the same time, second-guessing and challenging every decision and action of the Receiver, the Receiver Team was required to investigate and analyze every issue that arose at a level of detail that would not otherwise be necessary in a receivership like this.

On June 28, 2011, the Court entered various Consent Orders regarding Kowalewski's activities which, in effect, prohibit Kowalewski from further hindering the Receiver Team's progress in this case.  As a result, the Receiver Team has been able to focus on issues related to investor distributions, creditor claims, and other issues that will directly impact the amounts of recoveries and distributions in this receivership.

*SOF Assets.*  As set forth in more detail in the Receiver's First Interim Report, other than a residence on Pawleys Island, South Carolina, the assets of the SOF consist primarily of business ventures, including joint business ventures with several third parties.  In conducting its investigation, the Receiver Team discovered

that the value of these business ventures was substantially less than the amount of the SOF investments, and did not even approach the value placed upon them by SJK. Moreover, the Receiver Team discovered that many of these assets had unique and previously undisclosed issues, which also are set forth in more detail in the Receiver's First Interim Report. Addressing these unique issues and working with the SOF's business partners has continued to increase the complexity of this receivership. For example, the SOF's investments in CDLD Holdings, LLC, McNeely Developers, LLC, and potential liabilities associated with these projects have required a significant amount of the Receiver Team's attention, despite the fact that it has been clear throughout the receivership that the Receiver Estate would not obtain any benefit from these investments.

*Kowalewski's Tax Liability.* After his appointment, the Receiver learned that Kowalewski – personally, and through SJK, which is a single member limited liability company – may have had in excess of $10 million in taxable earnings in 2010 on which he has paid no taxes. Issues related to Kowalewski's tax liability, including what assets will be available to satisfy the liability, the impact of Kowalewski's tax liability on the Receiver Estate, and other related matters have made the administration of the Receiver Estate more difficult than expected. These issues are further complicated by the fact that, as discussed below, Kowalewski's

wife has claimed an ownership interest in the real property owned by Kowalewski, as well as certain "investments" Kowalewski made in the SJK Funds. The Receiver Team anticipates that issues related to Kowalewski's tax liability will continue to require a significant amount of the Receiver Team's resources going forward.

*Ownership Issues Regarding Real Estate and Assets.* Kowalewski's assets include two residences and $2.9 million in "investments" made by Kowalewski in the SJK Funds. Based on the Receiver's investigation and analysis, it appears the residences were purchased and investments made exclusively with funds transferred from the SOF to SJK and then to Kowalewski – *i.e.,* investor funds. Kowalewski's wife, however, has claimed an ownership interest in all of these assets. Though the Receiver does not believe that Kowalewski's wife has a legitimate ownership interest in any of these assets, her claims of ownership, coupled with the tax issues addressed above, have made the administration of these assets, including their potential sale, more complicated.

*Administration of Offshore Funds.* The Offshore Funds are Cayman Islands' entities, regulated by the Cayman Islands' Monetary Authority ("CIMA"), and subject to the jurisdiction of Cayman Islands' courts. The Receiver Team has worked with Cayman Islands' counsel to the funds to ensure that the

administration of the Offshore Funds' investments complies with Cayman Islands' law. Kowalewski's demands for advancement and indemnification from the Offshore Funds also increased the Receiver Team's activities related to the administration of the Offshore Funds. On June 28, 2011, the Court entered a Consent Order [ECF No. 100], granting the Receiver's motion on this issue and prohibiting Kowalewski from receiving advancement or indemnification of legal fees and expenses from the SJK Funds.

*Hickory Springs and Shelter Bay.* In late December 2010, the Hickory Springs Retirement Plan ("Hickory Springs") invested $7 million in the Offshore Absolute Return Fund, and the Shelter Bay Fund, LP ("Shelter Bay") invested $600,000 in the Onshore Absolute Return Fund. Both of these investments were to be effective January 1, 2011, and the investors' ownership interests were to be determined based on the two Funds' net asset values ("NAV") as of December 31, 2010. After being appointed, the Receiver learned that these investors were not issued ownership interests prior to the filing of this litigation. Because the NAV of the Onshore and Offshore Absolute Return Fund is based, in part, on the NAV of the SOF (which was substantially overstated by SJK), these investments presented unique issues regarding their appropriate treatment.

On July 1, 2011, after consulting with the investors in the SJK Funds, the Receiver filed his Investor Distribution Plan [ECF No. 102], which sets forth, among other things, the Receiver's proposed treatment of the investments made by Hickory Springs and Shelter Bay. On July 21, 2011, the Court approved the Receiver's Investor Distribution Plan [ECF No. 108], and the Receiver is now working towards a first distribution to investors in the SJK Funds.

*ERISA and Other Employee Benefit Issues*. SJK maintained for its employees a 401(k) plan, governed by the Employee Retirement Income Security Act ("ERISA"). Kowalewski was one of the trustees of the 401(k) plan. Kowalewski and the other trustee invested the assets of the 401(k) plan in the SJK Funds and indirectly in the SOF, resulting in losses to plan participants and in the plan's assets being used for the benefit of SJK and Kowalewski. In addition, the Receiver has discovered various errors with respect to the operation of the 401(k) plan, including late remittance of participant salary deferrals and certain missed matching contributions. These issues implicate potential tax-disqualification of the 401(k) plan, prohibited transactions with resulting excise taxes and fiduciary liability concerns for SJK and Kowalewski. The Receiver is working towards the resolution of these and other ERISA issues, which have required extensive research and analysis.

Lastly, the Receiver determined that SJK withheld, but did not remit to the federal and state governments, applicable income and employment tax withholdings with respect to various bonuses and other compensation paid to SJK employees in 2010 and 2011. The Receiver Team has been required to address the related liabilities and correction and is in discussions with the Internal Revenue Service regarding these issues.

19.

The amount of the fees and expenses sought in this Application is reasonable in light of the amount involved in the receivership, the complexity of the issues addressed by the Receiver Team, and the progress of the Receiver Team during the applicable time period.

20.

The extensive work performed by the Receiver Team during the period covered by this application is set forth in more detail in the pleadings and investor updates listed in Paragraph 4 of this application. Specifically, the Receiver's Investor Distribution Plan summarizes the progress of the Receiver with respect to numerous issues affecting investors in the SJK Funds, and also provides an update regarding various outstanding issues that may have a significant impact on this

receivership.  The Receiver has also continued the activities described in the First Interim Report.

Among other things, during the period covered by this application, the Receiver Team has:

a.    Addressed ownership issues with respect to late investments in the SJK Funds;

b.    Determined the accurate Net Asset Value of the SOF, as of December 31, 2011;

c.    Developed and filed the Investor Distribution Plan, which provides the process for all distributions to investors in the SJK Funds;

d.    Successfully defeated Kowalewski's requests for advancement and indemnification, which saved the Receiver Estate over $1 million in potential expenses;

e.    Filed several notices and motions, listed in Paragraph 4, above, which affect the administration of the Receiver Estate;

f.    Continued to manage the assets of the Receiver Estate, sold certain assets, and began the process of divesting the Receiver Estate of certain assets that have no value to the Receiver Estate;

g.      Put in place an electronic discovery management system to allow the Receiver Team to better analyze SJK's electronic records and to efficiently produce documents to third parties;

h.      Provided documents to the SEC, and responded to third-party subpoenas;

i.       Communicated with investors regarding the Receiver Team's progress and the issues that have arisen;

j.      Continued its review of SJK's files regarding the SOF's assets, communicated with various of the SOF's business partners and addressed various and unique issues related to each of the SOF's assets;

k.      Communicated with all managers of the third-party funds in which the SJK Funds were invested, analyzed the terms of the SJK Funds' investments in these third-party funds, and continued the process of redeeming the SJK Funds' interests in most of these funds, effective June 30, 2011, near the recent market high of the Dow Jones Industrial Average;

l.      Worked with SS&C to issue statements to investors in the SJK Funds;

m.     Worked extensively with Bennett Thrasher on issues related to audits of the SJK Offshore Funds for the year ended December 31, 2010 in order to ensure compliance with Cayman Islands' requirements;

n.     Addressed the various complicating issues caused by Kowalewski's misrepresentations and actions, and attempted to limit the impact of Kowalewski's actions on the Receiver Estate;

o.     Coordinated efforts with the Offshore Funds' Cayman Islands' counsel and ensured compliance with Cayman Islands' laws and regulations to facilitate the orderly administration of the Receiver Estate;

p.     Continued the process of taking control of, managing, and addressing legal and other issues related to the Receiver Estate;

q.     Continued analyzing the finance, accounting, and banking records of the Receiver Estate;

r.     Contacted employees and potential creditors in connection with the claims process necessary to ensure a fair and accurate claims administration and distribution process;

s.     Made demands on employees and third parties for the recovery of monies to the Receiver Estate;

t.     Conducted analysis, which is ongoing, of tax issues;

u.      Conducted analysis, which is ongoing, of employee benefit and ERISA issues;

v.      Conducted forensic analysis of the relevant financial transactions for the purpose of determining the various sources and uses of monies under Defendants' control during the course of the offerings that form the basis of this action.

All of these activities are set forth in detail in the invoices attached to this application.

21.

The Receiver requests that the Court authorize the payment of all fees and expenses incurred as set forth in Paragraph 13, above (and more fully described in the attached redacted statements).  The reasonableness of the amounts sought by this application is demonstrated by the amount and type of work performed by the Receiver Team, the complexity of the issues, and the progress that was made by the Receiver Team during the applicable time period.  All fees and expenses will be paid from the Receiver Estate.  A proposed Order granting the relief requested is attached as Exhibit G hereto.

22.

Pursuant to Section XVI of the February 2, 2011 Receivership Order, prior to the filing of this application, counsel for the Receiver consulted with the SEC and counsel for Kowalewski by providing them with a copy of this application. The SEC has reviewed the application and has indicated that it does not object to the fees sought herein.

WHEREFORE, S. Gregory Hays, Receiver, respectfully requests that the Court review and approve the fees for professional services rendered and costs advanced by the Receiver; Hays Financial Consulting, LLC; and Troutman Sanders LLP for the time period from May 1, 2011 through July 31, 2011, and authorize payment of such approved fees and expenses as requested herein.

This 13th day of September, 2011.

/s/ *J. David Dantzler, Jr.*
J. David Dantzler, Jr.
Georgia Bar No. 205125
david.dantzler@troutmansanders.com
Thomas B. Bosch
Georgia Bar No. 068740
tom.bosch@troutmansanders.com
Natalie D. Sacha
Georgia Bar No. 558276
natalie.sacha@troutmansanders.com

**TROUTMAN SANDERS LLP**
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA  30308-2216
(404) 885-3000 (phone)
(404) 885-3900 (fax)

*Attorneys for S. Gregory Hays, Receiver*

## CERTIFICATE OF COMPLIANCE OF LOCAL RULE 7.1D

I hereby certify that the foregoing has been prepared in a Times New Roman 14 point font, one of the font and point selections approved by the Court in Local Rule 5.1B.

/s/ *J. David Dantzler, Jr.*
J. David Dantzler, Jr.
Georgia Bar No. 205125

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing **SECOND APPLICATION OF RECEIVER FOR AUTHORITY TO PAY PROFESSIONAL FEES AND TO REIMBURSE COSTS** was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

A copy of this filing also has been provided by electronic mail to all investors in the SJK Funds and the SOF.

This 13th day of September, 2011.

/s/ *J. David Dantzler, Jr.*
J. David Dantzler, Jr.
Georgia Bar No. 205125